30 So.2d 459

**ALBAE et al. v. HARBIN.**

**1 Div. 288.**

Supreme Court of Alabama.

May 15, 1947.

202

Robt. H. Smith, of Mobile, for appellants.

Wm. G. Caffey and Jack C. Gallalee, both of Mobile, for appellee.

chase money for said property and is entitled in equity to have the title to said property invested in her."

Clara Stout Harbin (appellee) was a single woman named Clara Stout until she married Edgar J. Harbin on August 12, 1944. John S. Deloney was a married man, who had a wife and childen but had not lived with his family for about twenty-three years prior to his death on May 7, 1943. His wife and children all of age are still living. At the time of the transactions involved in this case John S. Deloney and Clara Stout were living together.

John S. Deloney left a will which has been admitted to probate. According to his will the property here involved was devised and bequeathed to Clara Stout for her life and "at her death to revert to my estate and title to vest according to the laws of descent and distribution of the State of Alabama." The will further provided that title to the property is "to revert and vest in my estate" in the event "she should marry and have a husband to support her." The respondents to the bill (appellants here) are the heirs at law of John S. Deloney, deceased.

■■ It is not practicable to set out the evidence in detail. In brief complainant testified directly to the point that she actually bought the lots in question, paying the entire purchase price therefor, but the contract of purchase was taken in the name of John S. Deloney. At the time John S. Deloney was 60 years of age, he was not working and had nothing with which to make payment. On the contrary she operated the filling station and a "general store—candy and sodawater and groceries" —on the property in question. The licenses for the business were issued to her. Her competency as a witness is not questioned. Warner v. Warner, Ala.Sup., 28 So.2d 701.[1] Her testimony must be taken as undisputed and warranting the establishment of a resulting trust (Jacksonville Public Service Corp. v. Profile Cotton Mills, 236 Ala. 4, 180 So. 583; Blanks v. Atkins, 217 Ala. 596, 117 So. 193), unless it can be said that the documentary evidence on which the respondents relied shows to the contrary, or

**STAKELY, Justice.**

This is an appeal from a final decree of the equity court which established a resulting trust in two lots of land located in Mobile County. In its decree the court found "that the title to the real estate * * * was taken in the name of John S. Deloney, now deceased, but that the complainant Clara Stout Harbin paid the entire pur-

[1] 248 Ala. 556.

unless it appears from the evidence that the consideration was not paid contemporaneously with the purchase of the land. Gandy v. Hagler, 245 Ala. 167, 16 So.2d 305; Merchants Nat. Bank of Mobile v. Bertolla, 245 Ala. 662, 18 So.2d 378. If complainant's testimony can be taken as undisputed, it is sufficient to comply with the rule that the evidence to establish a resulting trust must be clear and convincing. Montgomery v. McNutt, 214 Ala. 692, 108 So. 752.

On November 4, 1932, while John S. Deloney and Clara Stout were living on the property in question, John S. Deloney signed a contract with J. E. Rolston, Trustee, by which Deloney agreed to purchase the property. The contract recited a cash payment of One Dollar and $1300 to be paid in 36 monthly installments of $20 each and a last installment of $580. Only three or four payments were made when there was default in making payment. On November 15, 1934, a deed to the property was made by S. P. Gaillard, individually and as Trustee, and his wife Florence H. Gaillard to J. S. Deloney. This deed contains a recital to the effect that "the consideration and purchase price or cost of redemption for this deed has been advanced, furnished and delivered to the grantors by the Home Owners Loan Corporation as a loan to grantee herein, which said loan is secured by a mortgage by said grantee in favor of Home Owners Loan Corporation and said mortgage and this deed are executed and delivered simultaneously and shall be construed together as one transaction." It is claimed that the recital shows that the money paid for the property was the money of J. S. Deloney which he had received as a loan from the Home Owners' Loan Corporation. On November 20, 1934, J. S. Deloney and wife Gertrude Deloney made a mortgage to Home Owners' Loan Corporation to secure a debt of $1498, evidenced by note in that amount payable $11.84 monthly signed by John S. Deloney and Gertrude Deloney. This is the mortgage referred to in the deed.

The mortgage required the mortgagor to carry fire insurance with option in Home Owners' Loan Corporation to receive and apply any money payable under the policies on account of the debt secured by the mortgage. The mortgage also provides for subrogation of the contract between J. F. Rolston, Trustee.

After the bill of complaint was filed on May 11, 1945, and after the cross-bill and the answer thereto were respectively filed on June 5 and June 30, 1945, the building on the lots was burned. The proceeds of the insurance on the building paid the unpaid balance of $900 on the mortgage debt. The note marked "Paid in full and cancelled" was introduced in evidence.

Tax receipts introduced in evidence show that the property was assessed to John Deloney. It is insisted that this together with the documentary evidence shows that the purchase was made by Deloney. The deed was to him and the mortgage was signed by him and his wife. The wife did not testify. Substantially speaking we have only the documentary evidence for the respondents as against the testimony of complainant corroborated in part by her husband, Edgar J. Harbin. We think it is clear that the wife, Gertrude Deloney, borrowed no money, paid out no money and only joined in order to bar any possible dower or homestead interest.

But "equity * * * disregards form for substance, seeming for reality." Averett v. Averett, 243 Ala. 357, 10 So.2d 16, 18. In cases of this kind the deed is always to another and indicates that the grantee therein is the purchaser. If the deed and its recitals must control as against testimony that the purchase was for another who paid the purchase price, then in many instances proof of the truth would be cut off and the doctrine of resulting trusts substantially destroyed. As we shall show, the testimony of complainant that all of the money which paid the purchase price of the property was her money, is not contradicted by the fact, as contended by appellants, that there was a balance due on the mortgage signed by Deloney at the time the bill was filed. Nor does the presence of the balance on the mortgage indebtedness show that the consideration was not paid contemporaneously with the purchase.

Without dispute the testimony of complainant shows that the original contract of purchase was made in the name of Deloney for her. Her testimony shows that the initial and subsequent payments under that contract were made by her. When she could not meet the $20 a month payments specified in that contract, she got Deloney, as her agent, to apply for a loan from the Home Owners' Loan Corporation on the security of the property sufficient to pay out the contract, taxes and the existing vendor's lien. This plan made payment easier for her because the monthly payments were reduced to $11.84.

 Under the arrangement the proceeds of the loan never belonged to him. The loan was not for his benefit. Having been borrowed by him, as agent for complainant, to obtain title to the property for her use and benefit, it was her money. Deloney's only interest was to be secured and indemnified against paying any part of the mortgage indebtedness. Lauderdale v. Peace. Baptist Church of Birmingham, 246 Ala. 178, 19 So.2d 538; Blanks v. Atkins, 217 Ala. 596, 117 So. 193. The undisputed proof shows that she made the monthly payments with her money until the debt was reduced to $900. This balance was paid with the proceeds of the fire insurance.

Furthermore under the facts enumerated complainant in substance paid the consideration contemporaneously with the purchase. When Deloney signed the contract of purchase for her use and benefit and she obligated herself as a part of the transaction to pay the down payment and all future installments, as between her and Deloney she "was the party bound to make the stipulated deferred payments." Upchurch v. Goodroe, 242 Ala. 395, 6 So.2d 869, 872. When she later arranged with Deloney, as her agent, to borrow money on the property to finish paying for it and agreed to repay the money in installments as provided in the mortgage, she "was the party bound to make the stipulated deferred payments" and she comes within the rule that it is sufficient to create a resulting trust that she make the payments immediately payable and put herself under "obli-

gation to meet those which are deferred as they mature." Upchurch v. Goodroe, supra.

We conclude that the case was correctly decided by the lower court.

Affirmed.

GARDNER, C. J., and FOSTER and LAWSON, JJ., concur.